IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| WENDELL WILSON | : | NO. 07-215 |

MEMORANDUM

Baylson, J.                                                                                      **November 29, 2007**

I.   **Introduction**

Defendant Wendell Wilson, ("Defendant" or "Wilson") is under indictment pursuant to 21 U.S.C. § 844 for possessing with intent to deliver 5.87 grams of a mixture and substance containing a detectable amount of cocaine base ("crack"). His counsel filed a Motion to Suppress Physical Evidence discovered prior to his arrest on November 7, 2005, in the City of Philadelphia. The Court held an evidentiary hearing on this motion on September 12, 2007, and following briefing, the Court has determined that the Motion to Suppress will be denied.

II.   **Facts**

On Monday, November 7, 2005, at approximately 2:20 PM, Philadelphia police officers and drug enforcement agents were searching for an individual, named Edward Basley, who was purportedly a fugitive from several bench warrants and considered armed and dangerous. Basley was located in a sport utility vehicle in North Philadelphia. As police approached, they observed Wilson sitting next to Basley in the passenger seat of the SUV. As the police neared the vehicle, Wilson ran from the SUV and into a home on the side of the street where the SUV was parked. The police and agents pursued Defendant into the house and then into the darkened basement,

where they eventually apprehended him crouching behind a speaker.

While still in the darkened basement, Officer Richard Lynch of the Philadelphia Police Department handcuffed Defendant and conducted a pat-down search which revealed no weapons. Officer Lynch and another officer then removed Defendant to the area outside the house. (R. at 58-59). At that time, Lieutenant Sean Doris, the officer in charge at the scene, ordered the officers to relocate Basley and Wilson to a secure location at the nearby Germantown Cricket Club. Before carrying out the Lieutenant's orders, Officer Lynch conducted a second pat-down of Defendant, prior to placing him in a police vehicle. During that second search, Officer Lynch discovered the narcotics at issue in this case. (Id. at 60).

Officer Lynch testified that Defendant advised him that he resided in the house from which he had been removed at some point during the incident, though he was not sure exactly when. (Id. at 66, 68). Officer Lynch described the first pat-down as follows: "I got him out from behind the speaker and I cuffed him, and at that point, I did a quick pat-down. I was looking for weapons, make sure he did not have any weapons on him. Then, I took him upstairs and took him outside." (Id. at 58-59).

Once the Defendant was outside, Officer Lynch related the orders from the Lieutenant to take the suspects to the Germantown Cricket Club. He decided that before putting Defendant Wilson into his vehicle, he wanted to frisk him again, and when asked why, he stated:

> Because I didn't want to put him in my vehicle and – if he had any
> contraband or weapons on him for my safety. We do before –
> before our tour, we do a pre-tour check and an end-of-tour check . .
> . of our vehicles, a lot of times, you put people in vehicles and at
> the end of the tour you'll find drugs, knives and stuff like that . . .
> so before I put him into the vehicle, I patted him down. When I
> felt his left front pants pocket, I could feel – it was a – I could feel,

like, a baggie with a hard substance inside his pocket, which leads me – which led me to believe that it was crack cocaine. (R. at 60).

### III  Discussion

The Court credits the testimony of Officer Lynch and concludes as follows:

1. There was ample justification for the police, knowing that Basley was a wanted criminal, and seeing Defendant flee from the car in which he was Basley's passenger, to pursue Wilson into the house. See United States v. Silva 957 F.2d 157 (5th Cir. 1992) (where police decision to chase a suspect who was seen with a known criminal and who fled when they approached was upheld). The Court has considered whether Wilson is entitled to any additional protection under the Fourth Amendment because he lived in the house into which the police chased him, frisked him, and escorted him out in handcuffs. If the police had known that Defendant lived in that house at the time of the first pat-down in the basement, Defendant's argument would carry more weight. However, the Court finds that because the police did not know that Defendant lived in the house when they entered, he was not entitled to any special protection. The Court must judge the officers' conduct based upon what a reasonable officer, possessing only the information that the officers had at the scene, would have done. Terry v. Ohio, 392 U.S. 1, 21 (1968). It was reasonable for the police to follow a fleeing suspect, seen with a wanted drug dealer, into a building, and therefore their conduct was lawful. See Illinois v. Wardlow, 528 U.S. 119 (2000) (the defendant's flight upon seeing the police approach in a high crime area where drug dealers were conducting regular business established reasonable and articulable suspicion, warranting a chase and a Terry stop); see also, Silva supra at 160.

2. Because the officers' entrance into the house was justified, the pat-down of

Wilson in the basement of the house was valid under the principles of Terry, 392 U.S. at 1.[1]

3. Officer Lynch's decisions to handcuff Defendant and escort him out of the house were reasonable and legitimate investigatory steps, considering the overall circumstances, and because Officer Lynch did not know at that time that Defendant Wilson resided in that house. See supra Part III, §1.

4. The second pat-down of Wilson was also valid under Terry. Id. Defendant asserts that the police acted illegally when they removed Defendant from his own home, and conducted a second Terry search. However, the record does not show that the police had any knowledge that Wilson had run into his own home before the second pat-down took place outside the home. (R. at 60).[2] Defendant has not cited, nor has the Court been able to locate, any case law stating that, where a first Terry search is warranted, a second Terry search cannot be conducted for additional police protection. Thus, the police were justified in their second frisk of Defendant, which revealed the narcotics in question.

5. Officer Lynch's seizure of the crack cocaine in Wilson's pocket during the second frisk he conducted on Wilson was valid under the principles articulated in United States

---

[1] In Terry v. Ohio, The Court held that a police officer may conduct a warrantless stop if specific and articulable facts, together with all rational inferences, suggest that the suspect may be involved in criminal activity. A pat-down search for weapons is permitted when the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." 932 U.S. at 21.

[2] During cross examination Defense Attorney Pagano and Officer Lynch had the following exchange: Pagano: "And you brought him outside?" Lynch: "That is correct." Pagano: "And while you were doing that, my client told you that he lived in the property, correct?" Lynch: "He may have." The Court finds that this exchange is insufficient to establish that the police knew that Defendant Wilson lived in the house before Officer Lynch conducted the second frisk on Defendant.

v. Yamba, __F.3d.__ (3d Cir. 2007), 2007 WL 3054387. In <u>Yamba</u>, the Third Circuit affirmed the denial of a suppression motion attacking a search of the defendant where the police officer testified that he discovered that the defendant was in possession of illegal narcotics during a pat-down. The officer felt an object that he concluded was consistent with illegal drugs and removed that object, which was revealed to be a bag of marijuana. The Court held that the proper question to ask when analyzing a police search is not the immediacy and certainty with which the officer knows an object to be contraband or the amount of manipulation required to acquire that knowledge, but rather what the officer believes the object is by the time he has determined that the object is not a weapon. <u>Id</u>. at 7.

In the instant case, when Officer Lynch ran his hands over Defendant's cloths, frisking him a second time for weapons, he felt a substance in Defendant's left front pocket that he believed was a rock of crack cocaine. When he removed the substance, he found his suspicion had been correct. Defendant has presented no credible evidence that Officer Lynch's search went beyond the bounds of what the Third Circuit allowed in <u>Yamba</u>, and therefore this Court finds the police action to be lawful.

6.    The Court finds that the issue of whether the officers had adequate justification to remove Defendant to the Germantown Cricket Club is moot because the drugs in question were found before the move took place. If the second frisk of Defendant had occurred at Germantown Cricket Club, Defendant might have a better argument that he had been illegally detained and searched. However, the Court need only consider those factors which occurred prior to the second frisk of Defendant. By the time Defendant was moved to the Club, the police had already found drugs on his person and were, therefore, well within their authority to arrest and/or move

him from the scene of the incident.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to suppress the 5.87 grams of crack cocaine is denied. An appropriate order will follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| WENDELL WILSON | : | NO. 07-215 |

## ORDER

And now, on this 29th day of November, 2007, upon consideration of Defendant, Wendell Wilson's Motion to Suppress Physical Evidence, and the government's response thereto, Defendant's motion is DENIED.

BY THE COURT

_____
Michael M. Baylson, U.S.D.J

O:\Criminal Cases\07-215 Wilson, US v\Wilson 07-215 - Memorandum 11-26-07.wpd